STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID LEE STRADLEY,
*Defendant-Appellant.*

Linn County Circuit Court
08112364; A148475

308 P3d 284

George W. Kelly argued the cause and filed the brief for appellant.

Patrick M. Ebbett, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Armstrong, Judge.

HASELTON, C. J.

**HASELTON, C. J.**

Defendant, who was convicted of delivery of marijuana within 1,000 feet of a school, ORS 475.862, delivery of marijuana for consideration, ORS 475.860(2), possession of a controlled substance, *former* ORS 475.840, *renumbered as* ORS 475.752, *amended by* Or Laws 2013, ch 591, § 3, and frequenting a place where controlled substances are used, ORS 167.222(1), appeals. He assigns error to the trial court's failure to merge the delivery convictions and the denial of his motion for judgment of acquittal on the frequenting charge. The state concedes error with respect to merger, and we agree with and accept that concession; accordingly, the only remaining issue on appeal is whether the court erred in denying defendant's motion for judgment of acquittal on the frequenting charge. We conclude that the trial court did so err. Accordingly, we reverse and remand defendant's conviction under ORS 167.222(1), remand for merger and resentencing, and otherwise affirm.

In reviewing the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state to determine whether a rational trier of fact could find each element of the charged offense beyond a reasonable doubt. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994).

Stated consistently with that standard, the facts material to the frequenting charge are as follows. Defendant and his girlfriend, Thaxton, lived together in a rental home in Albany where they had resided for five years.[1] On November 25, 2008, Albany police officers executed a search warrant at defendant and Thaxton's residence. During that search, police found 18 tablets of Vicodin in a plastic bag taped behind a framed picture on the wall of the couple's living room. Defendant subsequently admitted that he possessed those pills illegally. There is no evidence in the record that Thaxton was aware of the Vicodin secreted behind the picture.

As noted, defendant was subsequently charged, *inter alia*, with both possession of the Vicodin and "frequenting" in violation of ORS 167.222(1). That statute provides:

---

[1] The record does not disclose in whose name the residence was leased.

"A person commits the offense of frequenting a place where controlled substances are used if the person keeps, maintains, frequents, or remains at a place, while knowingly permitting persons to use controlled substances in such place or to keep or sell them in violation of ORS 475.005 to 475.285 and 475.752 to 475.980."

At trial, the state argued that defendant was liable under ORS 167.222(1) because he "remain[ed]" in their shared residence while knowingly "permitting" *Thaxton* to "keep" the Vicodin pills in the home. That argument, in turn, was predicated, in part, on the premise that *Thaxton* had "kept" the Vicodin by *constructively possessing* the pills. As the prosecutor explained, in the state's view,

"two people can possess these pills. *** And, if you put it in a different kind of perspective, you're married, you have a television set, husband may have bought it, husband may claim this big-screen TV in his [living] room, however, you also possess it too. You know, just because you are in the house, it's yours also. So that's possession. More than one person can possess the same thing. [Defendant] allowed— he kept the house where Ms. Thaxton also kept those pills. *** The frequenting only applies to Ms. Thaxton and the pills ***."

Thus, in the state's view, defendant was liable not only for possession of a controlled substance based on his own actual possession of the Vicodin, but also for "frequenting" based on Thaxton's purported constructive possession of the same Vicodin.

Defendant moved for a judgment of acquittal against the frequenting charge, arguing that the state had not adduced any evidence that Thaxton had possessed the pills. The trial court denied that motion, and the jury found defendant guilty of all of the charges, including frequenting. Defendant appeals.

On appeal, defendant contends that the evidence adduced at trial was legally insufficient to establish that Thaxton constructively possessed—and, thus, "kept"—the Vicodin. Defendant further asserts that, in all events, the evidence was insufficient to demonstrate that defendant had legal control over Thaxton—and, thus, that defendant

"permit[ed]" Thaxton to "keep" the drugs in the house. The state responds that, because the evidence showed that Thaxton resided in the house (as opposed to being a mere social visitor), a reasonable trier of fact could find that she constructively possessed the drugs and that defendant permitted her to do so.

For the reasons that follow, we conclude that, because there was no evidence from which a reasonable trier of fact could find that Thaxton knew about the presence of the Vicodin, the evidence was legally insufficient to establish that Thaxton constructively possessed—and, thus, in the state's characterization, "kept"—the Vicodin for purposes of ORS 167.222(1).[2] Because there was no evidence that Thaxton "kept" the Vicodin, defendant could not have "permitted" her to "keep" that controlled substance in their shared residence. Accordingly, defendant could not be liable for "frequenting" in violation of ORS 167.222(1).[3]

For the limited purposes of the analysis that follows, we assume, without deciding, that the term "keep," as used in ORS 167.222, is synonymous with "possess" as defined in ORS 161.015(9). The latter provides that "'[p]ossess' means to have physical possession or otherwise exercise dominion or control over property."

We have held that "a person may have constructive as well as actual possession of contraband." *State v. Coria*, 39 Or App 507, 511, 592 P2d 1057, *rev den*, 286 Or 449 (1979) (citing *State v. Oare*, 249 Or 597, 439 P2d 885 (1968)). "To prove constructive possession, the state must prove that a defendant *knowingly* exercised control over, or had the right

---

[2] The state contends:

"While the verb 'to keep' is not defined in the statute, because ORS 167.222(1) requires a showing that the person permitted the keeping or selling of controlled substances in violation of the controlled substances statutes, those statutes provide meaningful context as to what the legislature meant by 'keep.' 'Keep' is not defined in those statutes either, but 'possession,' a synonym of 'keep,' is defined [in ORS 161.015(9)]. Accordingly, the question becomes whether defendant permitted Thaxton to 'possess' the drugs found in the home."

[3] Given our conclusion in that regard, we do not reach and address defendant's alternative contention as to the purported insufficiency of the evidence as to whether defendant "permitted" Thaxton to remain in their shared residence where the contraband was found.

to control, the contraband." *State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999) (emphasis added). "The right of control may be exercised jointly with other persons[;] it need not be exclusive in order for the defendant to be criminally responsible. Constructive possession may be proven by circumstantial evidence." *Coria*, 39 Or App at 511.

Thus, the inquiry here reduces to whether the "circumstantial evidence" in this case permitted a nonspeculative inference that Thaxton *"knowingly* exercised control over, or had the right to control," the Vicodin that was hidden behind the picture. *Evans*, 161 Or App at 89 (emphasis added). We conclude that the evidence was legally insufficient to support the requisite inference.

We acknowledge, at the outset, that, as a general proposition, "[e]vidence that contraband is found in quarters owned or occupied by a defendant can be sufficient to allow the inference that he or she has a right to control that contraband." *Id.* at 89; *see also State v. Bauer*, 128 Or App 598, 601, 876 P2d 802 (1994). However, that *"can* be sufficient" proposition is not categorically conclusive. That is, we have regularly—indeed, almost reflexively—invoked that proposition in cases in which the purported constructive possessor not only owned or occupied the premises in which the contraband was found, but also knew or, from the contraband's location, reasonably could have known, of its presence. *See, e.g., State v. Wrisley*, 138 Or App 344, 349, 909 P2d 877 (1995), *rev den*, 327 Or 521 (1998) (affirming conviction for unlawful possession of a short-barreled shotgun because evidence supported a finding of joint control of the shotgun and a reasonable inference that "defendant was *aware* of the shotgun's presence" (emphasis added); *State v. Garcia*, 120 Or App 485, 488, 852 P2d 946 (1993) ("The cocaine was found hidden in the kitchen of the apartment where defendant was staying, *and he admitted that he had handled it.* A reasonable fact finder could infer from that evidence that defendant knowingly exercised some right of control over the cocaine." (Emphasis added.)); *State v. Nehl*, 19 Or App 590, 592-93, 528 P2d 555 (1974), *rev den* (1975) ("Evidence that defendant and his wife had in their home large quantities of marihuana, certainly an abundant supply for usage by two persons, together with related

paraphernalia, *much of it in open view* as if regularly used, allows a reasonable mind to find that the defendant had actual or constructive joint or individual possession of that contraband." (Emphasis added.)).

We have never held—as the state urges us to do here—that, where one joint owner or occupier of a premises actually possesses contraband and, without the knowledge of another joint owner or occupier, hides the contraband within the premises, the latter can be deemed to have constructively possessed the secreted contraband merely by virtue of his or her joint ownership or occupancy. To do so would abrogate the "knowing" qualification of constructive possession. *See, e.g., Evans*, 161 Or App at 89; *Garcia*, 120 Or App at 487-88; *Coria*, 39 Or App at 511. We decline the state's invitation to do so in this case.

Here, as noted, the trial evidence, when viewed in the light most favorable to the state, established that (1) defendant and Thaxton lived together and (2) defendant actually possessed the Vicodin and hid it behind the picture in a common area. There was no direct evidence that Thaxton knew that defendant had hidden the Vicodin or otherwise actually knew of its presence. Nor was there circumstantial evidence (*e.g.*, that, from the location of the contraband, albeit "hidden," Thaxton could reasonably have known of its presence, or Thaxton's own possession and use of Vicodin) from which a trier of fact could reasonably have inferred that she knew of the Vicodin. Rather (again), the state's proof of Thaxton's knowledge—and, hence, her purported constructive possession—was limited to her status as a joint occupant of the premises. That proof was legally insufficient.

Given the legal insufficiency of the proof of Thaxton's purported constructive possession, the trial court erred in denying defendant's motion for judgment of acquittal on the frequenting charge.

Conviction on Count 5 for frequenting a place where controlled substances are used reversed; convictions on Counts 1 and 2 reversed and remanded with instructions to enter a judgment of conviction for one count of delivery of

marijuana within 1,000 feet of a school; remanded for resentencing; otherwise affirmed.